```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X

IRVING BARUCH,
                                            05-CV-5392
                        Plaintiff,          (CPS)(JMA)

        - against -
                                            MEMORANDUM OPINION
HEALTHCARE RECEIVABLE MANAGEMENT, INC.,     AND ORDER

                        Defendant.

-------------------------------------------X
```

SIFTON, Senior Judge.

Plaintiff Irving Baruch brought this action against defendants Healthcare Receivable Management, Inc. ("Healthcare Receivable" or "defendant"), John Doe, Jane Roe, and XYZ Corp. Plaintiff's complaint ("Complaint"), filed November 16, 2005, sought damages and declaratory relief for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, tortious infliction of emotional distress, and invasion of privacy.  Now before this Court are plaintiff's Objections to the Magistrate Judge's September 11, 2007, Report and Recommendation ("Report and Recommendation") as to damages.  For the reasons set forth below, I adopt in part and modify in part the Report and Recommendation.

## Background

*A. Procedure*

Plaintiff filed the Complaint herein on November 16, 2005. On February 9, 2006, defendant, represented by counsel, filed an

answer. On November 8, 2006, I granted defendant's counsel's motion to withdraw, effective upon the filing of a Notice of Appearance by new counsel, and referred the matter to Magistrate Judge Azrack for a settlement conference. A settlement conference was scheduled for January 6, 2007, and defendant was ordered to retain and appear with new counsel by that date. On January 15, 2007, Gilbert Hernandez, owner of defendant, expressed defendant's desire to "not spend any more funds on a case that has no merit." As defendant refused to appear or otherwise further defend this case, plaintiff made a motion for default judgment on February 21, 2007, which was served on defendant, which filed no opposition.

On May 9, 2007, the Clerk of the U.S. District Court for the Eastern District of New York noted the defendant's default pursuant to Local Rule 55.1 and Rule 55(a) of the Federal Rules of Civil Procedure. The matter was thereafter referred to the Magistrate Judge for an inquest. The remaining defendants were dismissed from the case by plaintiff on May 14, 2007.

On September 11, 2007, Magistrate Judge Azrack filed a Report and Recommendation, granting plaintiff $2,500 in actual and statutory damages and $305 in costs. On September 19, 2007, plaintiff filed an Objection to the Report and Recommendation.

*B. Facts*[1]

Plaintiff, who resides in Queens, alleged in the Complaint that on two occasions, February 4, 2000 and March 24, 2000, he went to Raytel Medical Imaging ("Raytel"), which is also located in Queens, for X-rays. On both occasions plaintiff told one of Raytel's employees that he would not be able to pay anything for the procedure, and that Raytel would have to accept any Medicaid disbursement as full payment. According to plaintiff, on each occasion the employee to whom plaintiff spoke conferred with her supervisor for a few minutes and stated the supervisor agreed on behalf of Raytel that plaintiff would neither receive any bill nor be responsible for any additional payment. Plaintiff thereafter went forward and had the X-rays taken and made no payments for the procedures.

In January, 2005, plaintiff began receiving calls from defendant. In these calls, defendant's representative stated the company was collecting a debt for Raytel. Plaintiff explained his arrangement with Raytel and refused to pay. Thereafter, on June 20, 2005, July 21, 2005, July 26, 2005, and September 13, 2005, defendant sent letters threatening legal action against plaintiff. Following receipt of each of these letters, plaintiff called defendant and asked if he were being sued. A

---

[1] Because default has entered against defendant, I accept as true all of the factual allegations in the Complaint, except those relating to damages. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

representative told him he was "not being sued yet." On these calls, plaintiff requested that defendant cease sending him letters and reiterated his refusal to pay. Defendant in turn threatened to report the debt on plaintiff's credit report. Plaintiff alleges that he was greatly upset by these calls, letters, and threats.[2]

**Discussion**

Plaintiff objects to the damages award recommended by Magistrate Judge Azrack, as well as the Magistrate's failure to award attorney's fees[3] and all costs requested by plaintiff. Federal Rule of Civil Procedure 72(b) provides that when ruling on objections to a Magistrate Judge's report and recommendation, which is dispositive of a case,

---

[2] The above facts were derived from the Complaint. In an affirmation in support of his motion for default judgment, plaintiff avers the following, additional facts, which were before the Magistrate Judge: Beginning in 2003, plaintiff began receiving collection notices from defendant, which asserted plaintiff owed defendant for the X-Rays performed by Raytel. Plaintiff called defendant to explain the situation. The supervisor to whom plaintiff spoke told plaintiff he did not care about any prior arrangements plaintiff had made, and that plaintiff had to pay the debt or defendant would send more collection letters and sue plaintiff.
  Since 2003, plaintiff avers, he received at least one collection letter every month, and numerous collection calls from the aforementioned supervisor, his wife, and other employees of defendant. When plaintiff asked defendant to stop, the supervisor would say upsetting things, such as "now I will send you 20 letter [sic] a month", "We will report this to the credit bureaus," or "We will ruin your credit."

[3] Plaintiff did not request attorney's fees in his application for default judgment, much less provide the information to Magistrate Judge Azrack that would allow her to determine reasonable fees. Therefore there was no reason Magistrate Judge Azrack would have made such an award. However, for the reasons set forth below, I consider this portion of plaintiff's "Objections" as a motion for attorney's fees under the FDCPA and rule accordingly.

> [t]he district judge to whom the case is assigned shall
> make a de novo determination upon the record, or after
> additional evidence, of any portion of the magistrate
> judge's disposition to which specific written objection
> has been made. The district judge may accept, reject,
> or modify the recommended decision, receive further
> evidence, or recommit the matter to the magistrate
> judge with instructions.

Accordingly, I review the Magistrate Judge's Report and Recommendation de novo.

As an initial matter, I adopt the portion of the Report and Recommendation, for the reasons stated therein, in which Magistrate Judge Azrack concludes that the Complaint establishes that defendant violated 15 U.S.C. § 1692e.[4][5]

---

[4] 15 U.S.C. § 1692e provides, in relevant part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(5) the threat to take any action that cannot legally be taken or that is not intended to be taken.

[5] The Magistrate Judge also concluded that the default constituted an admission of liability as to 15 U.S.C. § 1692c(c).

15 U.S.C. § 1692c(c) provides:

(c) Ceasing communication

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--

(1) to advise the consumer that the debt collector's further efforts are being terminated;
(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

*A. Damages*[6]

Section 1692k of the FDCPA provides for three types of damages: (1) statutory damages of up to $1,000; (2) actual damages for any injuries actually sustained; and (3) reasonable attorney's fees, costs and expenses. *See* 15 U.S.C. § 1692k(a). Plaintiff has averred the acts of defendant caused him "great emotional distress."[7] Due to defendant's acts, plaintiff "could not sleep, . . . got very depressed and . . . went to many doctors." He "was prescribed anti-depressant medication and sleeping pills." He also avers that defendant's acts caused him heart problems, requiring him to see cardiologists and get MRI's, which were aggravated whenever defendant called. As a result, plaintiff avers, he was forced to file for disability and his quality of life has suffered. No documentary or other

---

> If such notice from the consumer is made by mail, notification shall be complete upon receipt.

Even if defendant's default amounts to an admission of liability of all the well-pleaded allegations in the Complaint, plaintiff has not made out a violation of 1692c(c) because the allegations are only that plaintiff orally requested that defendant cease communication. Nevertheless, because plaintiff has pleaded and established a prima facie violation of 1692e, liability under the FDCPA is established, as a single violation of the FDCPA is sufficient to establish a debt collector's civil liability. *Chiverton v. Fed. Fin. Grp., Inc.*, 399 F. Supp.2d 96, 100, n.3 (D.Conn. 2005) (citing 15 U.S.C. § 1692k and cases).

[6] Though plaintiff now seeks $100,000 in damages, I note in his original motion for default judgment, filed February 21, 2007, he requested only $50,000. He did request $100,000 in his supplemental affirmation for default judgment, dated July 11, 2007.

[7] A plaintiff may recover actual damages under 15 U.S.C. 1692k(a)(1) for emotional distress. *See, e.g., Weber v. Goodman*, 1998 WL 1807355 (E.D.N.Y. 1998) (citing *Teng v. Metropolitan Retail Assoc.*, 851 F. Supp. 61, 68 (E.D.N.Y. 1994)); *see also* Cooper *v. Ellis Crosby & Associates, Inc.*, No. 05 CV 1467, 2007 WL 1322380, at *2 (D. Conn. May 2, 2007).

corroborative proof of the sort which would presumably have been created from doctors' visits, prescription medications, MRI's, disability claims or awards were presented to the Magistrate Judge. Nor was any expert opinion offered as to the causal relation between plaintiff's medical condition and defendant's actions.

1. Actual damages

There are relatively few benchmarks for the awarding of actual damages under the FDCPA for allegations of emotional distress. Courts within this circuit have awarded damages to individuals for emotional distress in amounts ranging from $1,000 to $5,000. *See Cooper v. Ellis Crosby & Assoc., Inc.*, 2007 WL 1322380 (D. Conn. May 2, 2007) ($3,000); *Gervais v. O'Connell, Harris & Assoc., Inc.*, 297 F. Supp.2d 435 (D. Conn. 2003) ($1,500); *Chiverton v. Fed. Fin. Group, Inc.*, 399 F. Supp.2d 96 (D. Conn. 2005) ($5,000); *Teng v. Metropolitan Retail Assoc.*, 851 F. Supp. 61 (E.D.N.Y. 1994) ($1,000).

I compare the facts of these cases with those of the instant case, because in those cases, as in this one, plaintiffs' complaints are not corroborated by any medical or documentary evidence. The cases suggest that the relevant factors include the egregiousness of the misconduct and the plaintiffs' descriptions of their injuries.

In *Cooper*, an employee of the defendant debt collection

agency called plaintiff at work, identified himself as an investigator for a bank rather than an employee of defendant, and threatened to have her arrested if she did not pay $4,300 within two hours of the call. He also threatened to notify her supervisor and subpoena her work hard drive. Plaintiff testified that she suffered anxiety, embarrassment, inconvenience, and worry as a result. The court awarded $3,000 in actual damages.

In *Gervais*, over the period of a week, an employee of defendant debt collection agency hounded plaintiff for payment on three credit cards, misrepresenting that he was an attorney and other facts. Plaintiff, who had suffered several heart attacks and a stroke, sent payment to the defendant, per the employee's instructions. Plaintiff testified that he was confused and fearful both of losing his assets and of having another heart attack and stroke. The Court awarded $1,500 in actual damages.

In *Chiverton*, an employee of defendant debt collection agency harassed each of the two plaintiffs over a period of several months. Beginning in July 1999, defendant called the first plaintiff, Chiverton, at work seeking to collect a debt that Chiverton had previously satisfied. Chiverton told defendant as much and sent documentation as proof. Nevertheless, two weeks later, defendant called Chiverton again, and again Chiverton told defendant the debt had been satisfied and faxed documentation as proof. In October 1999, Steven Deer, a

representative of defendant, called again. Chiverton told Deer he was not allowed to take personal calls at work. Deer continued to call, and on one occasion in November 1999, called Chiverton several times in succession. As Chiverton was a fiscal supervisor with the Department of Defense and awaiting a commission as a second lieutenant, he was forced to tell his supervisor and was fearful his commission would be affected. As to the second plaintiff, Collier, Deer called her at least 20 times between November 1999 and January 2000. He also called Collier's grandson and daughter about the debt, and threatened her with arrest. Collier averred in her affidavit that Deer's conduct caused her embarrassment, anxiety and shame. The court awarded Chiverton and Collier $5,000 each in actual damages.

In *Teng*, defendant called plaintiff's place of employment several times in a single day, and, as it was plaintiff's day off, requested plaintiff's home number from plaintiff's supervisor under the ruse of needing to get an urgent, personal message to plaintiff. An employee of defendant also called plaintiff's home later that night, identifying himself as a City Marshall, and threatening to come take away his furniture. The court awarded $1,000 in actual damages.

In this case, plaintiff submitted to the Magistrate Judge his affirmation that, since 2003, he received numerous threatening telephone calls and letters, as a result of which he

lost sleep, became depressed and suffered heart problems. The defendant's acts therefore lasted longer than any of the acts in *Cooper*, *Gervais*, *Chiverton*, and *Teng*. It is also plausible that plaintiff has suffered anxiety, sleeplessness and depression over the course of defendant's misconduct. *See Donahue v. NFS, Inc., Donahue v. Lonocha*, 781 F. Supp. 188, 194 (W.D.N.Y. 1991) ("acknowledging that plaintiff suffered some quantum of mental or physical distress stemming in part" from defendants' violations of FDCPA). Accordingly, I award $5,000 in actual damages.[8]

2. Statutory damages

In determining the amount of statutory damages, which are limited to $1,000, 15 U.S.C. § 1692k(a)(2)(A), a court shall consider, among other factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). No objections having been filed, and for the reasons stated therein, I adopt the portion of the Report and Recommendation that recommends

---

[8] I note that there is some authority that generalized, blanket assertions are "insufficient proof of specific injury to justify an award of actual damages under the FDCPA." *Kreuger v. Ellis, Crosby & Assoc., Inc.*, 2006 WL 3791402, at *2 (D. Conn. Nov. 9, 2006) (declining to award actual damages in FDCPA case where plaintiff alleged only that defendant caused him 'anxiety, embarrassment, inconvenience, and worry') (citing *Emanuel v. Am. Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989); *Evanauskas v. Strumpf*, 2001 WL 777477, at *5 (D. Conn. June 27, 2001)). However, here the duration and persistence of the misconduct makes the plaintiff's assertions more plausible than the claims in the cited cases.

plaintiff be awarded statutory damages in the amount of $1,000.[9]

   *B. Attorney's fees and Costs*

The FDCPA requires the payment of costs and reasonable attorney's fees to a successful plaintiff. 15 U.S.C. §1692k(a)(3)[10]; *see also Savino v. Computer Credit,* Inc., 164 F.3d 81, 87 (2d Cir. 1991); *Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989) (FDCPA mandates such an award for a successful action). Plaintiff was successful in this action, receiving an award of $5,000 for actual damages and the maximum $1,000 for statutory damages. Thus, plaintiff is entitled to an award of attorney's fees and costs.

      1. Attorney's Fees

The Second Circuit uses the "presumptively reasonable fee," known as the "lodestar figure" (or "lodestar") in other circuits, to determine reasonable attorneys fees for federal claims. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 493 F.3d 110 (2d. Cir. July 12, 2007); *Cruz v. Local*

---

   [9] Because I award damages for emotional distress under the FDCPA, I need not reach the common law tort claim. *Chiverton*, 399 F. Supp.2d at 102, n.4. Further, the Magistrate Judge, in her Report and Recommendation, did not consider damages under either of plaintiff's common law claims for the same reason, and plaintiff does not object to this portion of the Report and Recommendation. In plaintiff's Statement of Damages, filed with his Motion for Default Judgment, plaintiff seeks damages only for emotional distress.

   [10] 15 U.S.C. § 1692k(a)(3) provides, in relevant part:
   any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--

   (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

*Union No. 3 of the International Brotherhood of Electrical Workers,* 34 F.3d 1148, 1159 (2d Cir. 1994); *Heng Chan v. Sung Yue Tung Corp.*, No. 03-CV-6048, 2007 WL 1373118 (E.D.N.Y. May 8, 2007).

The presumptively reasonable fee "is arrived at by multiplying the number of hours reasonably expended on the litigations . . . by an hourly rate." *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 172 (2d Cir. 1998). In the Second Circuit "any attorney . . . who applies for court-ordered compensation . . . must document the application with contemporaneous time records." These records should specify, for each attorney, the date, the hours expended and the nature of the work. *New York State Ass'n for Retarded Children, Inc., v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). However, "[i]t is not required that counsel describe in great detail how billable time was spent; it is sufficient to identify the general subject matter of time expenditures." *Aiello v. Town of Brookhaven*, No. 94-CV-2622, 2005 WL 1397202, *9 (E.D.N.Y. 2005)(citing *Perdue v. City Univ. of New York*, 13 F. Supp.2d 326, 345 (E.D.N.Y. 1998)).

Plaintiff's attorney expended 37.2 hours during the course of this litigation. Plaintiff's attorney's hourly rate is $385.00. Thus, plaintiff requests an award of attorney's fees of $14,322.00.

The attorney's rate must be "'in line with those [rates]

prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'" *Cruz v. Local Union No. 3*, 34 F.3d at 1159 (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984)). Indeed, the Second Circuit has held that the rates used to calculate the "lodestar" must be in line with those rates prevailing in "'the district in which the court sits.'" *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) (quoting *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)). At the same time, however, the Second Circuit has made it clear that "[a] district court's 'choice of rates [is] well within [its] discretion.'" *Cruz*, 34 F.3d at 1159 (quoting *Cabrera v. Jakabovitz*, 24 F.3d 372, 393 (2d Cir. 1994)).

In the Eastern District of New York, courts have awarded hourly rates to partners ranging from $200.00 to $375.00. *See Commission Express Nat'l, Inc. v. Rikhy*, 2006 WL 385323 (E.D.N.Y. Feb. 17, 2006) ($300); *Aiello*, 2005 WL 1397202, at *7 ($350) (compiling cases); *General Motors Corp. v. Villa Marin Chevrolet, Inc.*, 240 F. Supp.2d 182 (E.D.N.Y. 2002) ($315 to $375 based upon detailed description of experience and expertise); *Luciano v. Olsten Corp.*, 912 F. Supp. 663 (E.D.N.Y. 1996) ($200 for partner at a small firm).

Plaintiff's attorney provides an affirmation that he has been practicing law for 19 years. He also appears to be a sole

practitioner. Though his rate is at the high end of the awards discussed above, I note that several of the cited cases are a few years old and it is safe to assume that hourly rates have risen since the cases were decided. He provides, however, no additional information concerning the reasonableness of his rate, which falls at the high end of awards granted to partners in this district, and thus has failed to meet his burden to demonstrate the reasonableness of his rate. *See Aiello*, 2005 WL 1397202, at *7 (citing *Blum*, 465 U.S. at 896 n. 11) ("the burden is on the fee applicant to produce satisfactory evidence . . . that the requested [hourly] rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." ) (emphasis added). Accordingly, the Court finds it appropriate to reduce Mr. Klein's hourly rate from $385.00 to $350.00.[11] *See id.; General Electric Co. v. Compagnie Euralair, S.A.*, 1997 WL 397627, at *5 (S.D.N.Y. July 3, 1997) (reducing fee request where the plaintiff's counsel did not provide the court with adequate information as to counsel's experience level or why billing rate was reasonable).[12]

---

[11] Though from the District of Connecticut, I note that at least one court has awarded attorney's fees in FDCPA in the amount of $350.00/hour. *Cooper*, 2007 WL 1322380, at *3.

[12] Plaintiff does cite the Laffey Matrix, which purports to set forth $509/hour as a reasonable rate for an attorney with nineteen years of experience. The Laffey Matrix, however, has not been adopted, or even cited with approval, by any court in this Circuit. Moreover, the Matrix's website

Plaintiff has submitted an affidavit describing the nature, date, and hours spent on this case. In total, he spent 37.2 hours. I find, however, that 1.3 hours represent clerical or other work not compensable at an attorney's rate, such as copying, mailing, and uploading documents to this Court's Electronic Case Filing system. *See* 10/30/2006, 2/21/2007, 7/23/2007, and 7/30/2007 entries. Such work may not be billed at attorney or paralegal rates. *Missouri v. Jenkins,* 491 U.S. 274 (1989). Thus, I find that 35.9 hours spent by plaintiff's attorney were reasonable.

Thus, multiplying 35.9 hours by $350 equals $12,565. I grant plaintiff attorney's fees in this amount.

     a. Proportionality

The attorney's fee award is approximately twice the damages award. The Second Circuit has rejected a rule requiring strict proportionality between the fee award and the damages award at least in the context of civil rights statutes. *Cowan v. Prudential Ins. Co. of America*, 935 F.2d 522 (2d Cir. 1991). The court in *Cowan* stated that "a presumptively correct lodestar figure should not be reduced simply because a plaintiff recovered a low damage award." *Id.* at 526.

The Second Circuit has recently reaffirmed its decision in

---

bills itself as the "The primary tool for assessing legal fees in the *Washington-Baltimore* area." http://www.laffeymatrix.com/ (last visited Oct. 17, 2007) (emphasis added). Thus, plaintiff's citation adds little, if any, support to his contention that $385/hour is a reasonable fee.

*Cowan* that proportionality of the fee award to the damages award cannot serve as the sole factor for determining allowable fees in civil rights cases. *See Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) ("If the district court reduced the fee in the belief that the claimed hours were simply disproportionate in a case involving a $2500 injury, without regard to the reasonableness of the attorney's expenditure of time in responding to the particular circumstances, this was error."); *see also Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425-26 (2d Cir. 1999). "Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation." *Id.* at 426 (citing *Rivera*, 477 U.S. at 575 (plurality opinion) ("Congress did not intend for fees in civil rights cases . . . to depend on obtaining substantial monetary relief.")).

The same rationale applies to awards of attorney's fees under the fee shifting provisions of FDCPA. Since recoveries under FDCPA are typically small, as evidenced by the cases discussed above and due to the limitation on statutory damages provided in 15 U.S.C. § 1692k, a proportionate fee award would often be insufficient to attract competent counsel. Thus, the $12,565 award is appropriate. Such an award is approximately twice plaintiff's damages award.

2. Costs

Costs are ordinarily recoverable if they are "incidental and necessary to the litigation." *Tips Exports, Inc., v. Music Mahal, Inc.,* 2007 WL 952036 (E.D.N.Y. Mar. 27, 2007). Costs relating to filing fees, process servers, postage, and photocopying are routinely made. *See id.* at 11. "It is also reasonable that counsel be reimbursed for mileage and parking costs" as well as gas. *See Rand-Whitney Containerboard v. Town of Montville*, 2006 WL 2839236 (D.Conn. Sept. 5, 2006). Though plaintiff has submitted an itemized list of his attorney's costs, he has provided no supporting documentation. Further, his requested costs differ from those requested in his earlier Statement of Damages, filed with plaintiff's Motion for Default Judgment. Indeed, in his current cost request, plaintiff requests $350 for the filing fee, although the filing fee at the time the action was commenced was $250.[13] Because plaintiff has failed to meet his burden of demonstrating costs, I adopt the recommendation in the Recommendation and Report that plaintiff be awarded $305 in costs, this amount representing filing and service fees. Thus, an award of costs should be entered in the amount of $305.

---

[13] The increase of the filing fee from $250.00 to $350.00 applies to cases filed on or after April 9, 2006. This case was filed on November 16, 2005. Thus, the $250.00 fee was applicable.
http://www.nyed.uscourts.gov/General_Information/Schedule_of_Fees/Court_Fees/court_fees.html (last visited on October 25, 2006).

## Conclusion

For the foregoing reasons, I adopt in part and modify in part the Report and Recommendation. The Clerk is directed to enter judgment in favor of plaintiff and against defendant in the amount of $18,870.00, representing $6,000 in actual and statutory damages, $12,565 in attorney's fees, and $305 in costs. The Clerk is also directed to transmit a copy of the within to all parties and the assigned Magistrate Judge.

SO ORDERED.

Dated :   Brooklyn, New York
          October 29, 2007

                    By: /s/ Charles P. Sifton (electronically signed)
                                United States District Judge